## MAYS *v.* DEAVER.

Where bills of exceptions in a cause were signed, "Seevers, Judge," and "W. H. Seevers, Judge," and a motion was made to strike the exceptions from the record, for the reason that they were not properly signed; *Held*, that the exceptions were sufficiently signed by the judge.

Those papers which the law recognizes as constituting the record files, or which are properly made a part of the record, being embodied in one transcript, or united together, and certified by the official certificate of the clerk of a known court, under his seal of office, are presumed to be authentic, at least, until something is shown against them.

Where a bill of exceptions is silent as to when it was settled, this court will presume that it was taken in term regularly, or so settled by agreement, without any reference to the time of filing.

A motion for a new trial is a part of the record of the cause, without being embodied in a bill of exceptions, under section 1977 of the Code.

A witness, although he states that he did not hear the whole of a conversation, may be permitted to testify to that part which he did hear.

Where a question put to a witness is objected to, and the objection is overruled, and the witness allowed to answer, this court cannot consider the correctness or incorrectness of the question, unless the answer of the witness to the interrogatory, is shown by the record.

It is not sufficient to show that an improper question was asked a witness; it must also appear, that the answer thereto, disclosed improper and illegal testimony, prejudicial to the party objecting.

Where an affidavit on which a motion for a new trial was based, alleged that the party, since the trial, had discovered new evidence unknown to him before; that the evidence of two persons, whose affidavits are appended to the motion, had been brought to his knowledge since the trial; that one Durham had informed affiant, since the trial, that he was present at a conversation between plaintiff and one Woods, setting out the substance of the conversation; that after the conversation between plaintiff and Woods, one Truman told plaintiff that he had lived near the land in controversy, and it was one of the best pieces of timber in the country; that plaintiff said he would go down and close the trade for the land at once; that affiant believes he can show from the testimony of Truman, that said plaintiff traded on said Truman's representations; that he made inquiry for said Truman, to have him at the trial, but was unable to find or see him; and that one of his witnesses, who was subpœnaed, on being called, was found to be at home, sick.

*Held*, 1. That the affidavit did not show due diligence to obtain the testimony of the witnesses.

2. That the evidence in the cause, not being before the court, it could not know that the newly discovered evidence was not merely cumulative.

3. That the affidavits of all the new witnesses, showing what their testimony would be, should accompany the motion.
4. That it did not appear from the record, that the court below had not exercised a proper discretion in overruling the motion for a new trial.

## *Appeal from the Mahaska District Court.*

THIS was an action commenced by Mays against Deaver, in July, 1854, for damages resulting to the plaintiff, by reason of fraud and misrepresentation of the defendant, in the sale of certain real estate, purchased by plaintiff of defendant. All the averments of the petition are denied in the answer; but as no question is raised with regard to the pleadings, it is unnecessary to notice their respective allegations and denials. On the trial, as appears from the record, the plaintiff called one Johnson, for the purpose of proving the contract in relation to the sale of the land in controversy, and the representations made by defendant at the time, as to the quantity and quality thereof. The witness stated, that he went to the house of plaintiff; that the parties were conversing about the land, and discussing the terms of the sale, when he went in; and that the conversation was continued in his hearing and presence. The witness then, at the instance of the plaintiff's counsel, proceeded to state all of the conversation heard by him, to which the defendant objected, for the reason that the witness did not hear all of the conversation, and therefore he should not be allowed to detail so much as he heard. This objection was overruled, the witness was permitted to testify, and the defendant excepted. What the witness stated, however, is not shown. After the plaintiff had given evidence tending to show the terms of the trade, and the representations of defendant as to the quality of the land—that plaintiff purchased on the faith of defendant's representations—that defendant had represented the land as consisting of one hundred acres of good timber; and sixty acres of good dry prairie, and that the land was not of the character it had been represented to be, but consisted, in fact, of a

Mays v. Deaver.

small portion of timber, and the balance of poor prairie—
he introduced a witness, who stated that he was a surveyor,
and had surveyed, and was well acquainted with, the land;
the plaintiff, then, for the purpose of proving his damages,
asked the witness this question: "What would said land
be worth, if it consisted of one hundred acres of good
timber, and the balance dry prairie?" The defendant ob-
jected to this question, for the reason alone, that it was not
the proper mode of proving the measure of damages in this
case, but the court overruled the objection, and permitted
the question to be answered. The testimony given by the
witness is not stated, nor in any manner referred to. The
jury returned a verdict for the plaintiff.

The defendant then filed a motion to set aside the ver-
dict, and for a new trial, on the ground, among other things,
of newly discovered evidence, based upon an affidavit, in
which he alleges, that he has since the trial, discovered evi-
dence unknown to him before; that the evidence of two
persons, whose affidavits accompany the motion, has been
brought to his knowledge since the trial; that one Durham
has informed affiant, since the trial, that he was present at a
conversation between plaintiff and one Woods, setting out
the substance of the conversation; that after the conver-
sation between plaintiff and Woods, one Truman told
plaintiff, that he had lived near the land, and it was one of
the best pieces of timber in the country, and that plaintiff
said he would go down and close the trade for the land at
once; that affiant believes he can show from the testimony
of Truman, that plaintiff traded on said Truman's repre-
sentations; that he made inquiry for said Truman, to have
him at the trial, but was unable to find or see him; and
that one of his witnesses, who had been subpoenaed, on being
called, was found to be at home, sick. The court overruled
the motion for a new trial, judgment was entered on the
verdict, and the defendant appeals to this court. The errors
assigned, may be reduced to three:

1. In the admission of the testimony of Johnson.
2. In the admission of the evidence as to damages.

3. In overruling the motion for a new trial.

In this court, the appellee.moves to strike from the record bills of exception numbered one, two, and four, and also, what purports to be a motion for a new trial.

*Eastman & Rice*, for appellant.

*Loughridge & Cassidy* and *W. Penn. Clarke*, for appellee.

WOODWARD, J.—This cause now comes up upon the motions of the appellee. His first motion is to strike from the record, bills of exceptions numbers one and two.

1. Because they are not signed by William H. Seevers, judge of the third judicial district of the state of Iowa.

2. Because they do not show, nor does the record show, that they were taken and signed during the trial of the cause, and before verdict rendered, or that time was allowed by the court to settle the same. Counsel refers to the Code, §§ 1805 and 1806; *Jones* v. *Sprague*, 2 Scam. 55; *Hicks* v. *Pierson*, 19 Ohio, 426.

The facts upon which the first ground of the motion is based, are, that the first bill is signed " Seevers, Judge," and the second, " W. H. Seevers, Judge."

If all papers were rejected from the files of the court, which do not show upon their faces respectively, to what state, district, county or court, or to what cause, or judge's jurisdiction, they belong, but few would remain. It is true, that it would be a much more professional and workmanlike paper, and far more satisfactory to the mind, if each one should show in its title to what cause, and where it belongs. But few papers in our courts, would, in fact, bear this test, and this is not the ground upon which they are usually received. Many papers in causes, have not the name of the cause; some are not entitled of the court below, or the court above; most of them probably have not the name of the state, or of the county; and several of these points would apply to the papers on both sides, in this case. Why, then, are such papers received? Those papers which the law recognizes as con-

stituting the record files, or which are properly embodied as a part of the record, in one transcript, or united together and certified by the official certificate of a clerk of a known court, under his seal of office, are thus authenticated, at least, until something is shown against them. This authentication secures the presumption, at least, that the given paper belongs to the state, the district, the county, and court, whose clerk certifies it, and the cause in which he has certified it. We judicially know the districts and who are the judges of them, and the signature itself, and the transcript of it, is presumptive evidence of the genuineness of the original, as being that of the *said* judge, and of none other. The paper is certified under the judicially known seal of a court and county, in a district, and under a judge, all judicially known to the extent of all needful presumption, at least. There must be his name and office, it is true, but why his initials, more than his full Christian name or names, and what need of affixing his district. There is no more danger of mistake or forgery under this, than under a theory requiring everything full and express. Scarcely a case could stand in a court, without this reasoning. Neither the signatures to the record of this court, nor those of the District Court, oftentimes, have this fullness of explanation. The bill of exceptions coming up with a cause, seldom contains all that is required by these motions. It is true, that, if this practice is erroneous, it should be rectified; but we cannot consider it erroneous in the legal sense, although it would be better practice, if the papers should show more fully what they are.

As to the second ground for this motion, the last clause of section 1805 of the Code, seems to answer it, by providing that " where a bill of exceptions is subsequently filed, such consent shall be presumed, unless the contrary be shown by the record." But this bill does not appear to have been filed subsequently to the trial; and in the case of *Claggett* v. *Gray*, *ante*, 19, this court has held, that where the bill of exceptions is silent as to when it was settled, we will presume that it was taken in term regularly, or so settled by agreement, without

any reference to the time of filing. None of these bills show in the transcript, when they were filed.

The appellee's second and third motions may be stated and considered together. They are, to strike from the record bill of exceptions number four, because it refers to a motion for a new trial, which is not copied therein; and to strike out what purports to be a motion for a new trial, because such motion is properly no part of the record, the same not having been embodied in a bill of exceptions. And counsel refers to *Reed* v. *Hubbard*, 1 G. Greene, 153 ; *Cook* v. *Steuben Co. Bank*, 2 G. Greene, 447 ; *Abbee* v. *Higgins*, 2 G. Greene, 535 ; *Harriman* v. *The State*, 2 G. Greene, 270 ; *Huff* v. *Gilbert*, 4 Blackf. 19 ; 2 Ib. 402 ; *Troy* v. *Reilly*, 3 Scam. 259 ; Code of Iowa, 1977.

Under the former practice, to which these authorities refer, there could be no question but that this motion must prevail. But the case stands in this respect upon section 1977 of the Code, referred to by counsel. It had been held by many courts, and by some of our own, among them, that the original writ was not a part of the record. This arose from the English view, where the practice in relation to bringing a party into court, differed so widely from the American. We proceed upon the ground of giving a party notice, and then he may appear or not, as he pleases. If he does appear, the writ and service are of no consequence. But in taking judgment by default, they are of vital importance, to show the jurisdiction of the person; as they are, also, when being sued upon the judgment of another state, the defendant denies notice and appearance. And, again, doubt and controversy arose upon the question, what is record ? and much labor and time was taken up in courts and on trials, in making that record, which might well be considered such. We presume these and similar views, entered into the consideration of the legislature, when they adopted a system intended to shorten and simplify legal proceedings; and when they provided in section 1977, that " all proper entries made by the clerk, and all papers pertaining to a cause and filed therein (except sub-

pœnas, depositions, and other papers which are used as mere evidence), are to be deemed parts of the record."

In this case, there is a motion for a new trial, regularly certified by the clerk, marked filed, and the transcript of the record proper, refers to it as filed and overruled. The bill of exceptions, number four, certifies that this motion came up for hearing and was overruled, and that defendant excepted. We think this motion was a part of the record, within the meaning and purpose of the statute. This practice will be found, we apprehend, more convenient than the former, but yet some care will be requisite in identifying papers, when there is a plurality of them, and in causing the record proper, to show that they were filed.

We are not called upon in this case, to decide whether or not a bill of exceptions should accompany and show the exception taken to the decision on such a motion, for such a bill does accompany this. It is at least safe, that a bill should show the exception taken to the ruling on any paper, which, when filed, was not a part of the record at common law, and that the record should show such filing. The motions are, therefore overruled.

WRIGHT, C. J.—We find no error in the admission of the testimony of the witness, Johnson. The rule referred to by appellant in 1 Greenleaf on Ev., § 201, and other authorities there cited, is very well settled, but does not affect this question. Those authorities only assert the general principle, that where part of a declaration or conversation is received, the whole that was said at the same time relating to the same subject, may be elicited, in order that the true meaning and import of the conversation may be ascertained. And so, in this case, the defendant would have a right to call out that entire conversation, if in his power to do so ; but because the witness did not happen to hear all of it, we know of no rule that would exclude what he did hear. That he did not hear all, would go to the effect of the testimony, and not to its admissibility. As a general rule, such evidence should be received and weighed by the jury with

Mays v. Deaver.

very great caution, it being weak in its character, and sub-
ject to much imperfection, and mistake. And subject to
this just qualification, such testimony must go to the jury.
We admit the injustice that may arise in many cases, by ad-
mitting a part of a conversation, when all was not heard,
but we are aware of no rule that will prevent its admission,
subject to all just exceptions to its weight and effect. To
exclude such evidence would be, in effect, to prevent the
admission of declarations in almost every instance. There
are few cases, perhaps, in which the witness could state
positively that he heard all that was said; or if he did, that
he could state all that he did hear. And yet the admission
of such testimony is of every day occurrence. Its admissi-
bility is not doubted. The effect of it, however, is an en-
tirely different question. *State* v. *Corington*, 2 Baily, 569;
*Cleveland* v. *Burton et al.*, 11 Vermont, 138; 3 Phillipps on
Ev. Cow. & Hill's notes, 337.

On the second error assigned, the appellee claims, that in-
asmuch as the testimony of the witness, or his answer to the
question propounded, is not given or shown, this court can-
not consider the correctness or incorrectness of the question
itself. And to this opinion we incline, and so hold, though
not without some doubt. The rule has been frequently re-
cognized by this court, and is now well settled, that error
will not be presumed—that it must be disclosed by the
record; and that it must appear that the party complaining,
was prejudiced by the error of which he complains; that a
state of facts will not be presumed in order to find error.
See *Lawson* v. *Campbell & Bro's*, decided at the December
term, 1854, of this court. That the record should show that
the party was prejudiced by the error of which he complains,
see *Brewington* v. *Patton & Swan*, and the authorities there
cited, *ante*, 221; also, 1 Alabama, 519 and 582; *State* v. *Cowen*,
7 Iredell, 239. That it is not sufficient to show that an im-
proper question was asked a witness, unless it also appear
that the answer thereto disclosed improper and illegal testi-
mony, and to the prejudice of the party objecting, see
*Samuel* v. *Withers*, 9 Miss. 166; *Withington* v. *Young*, 4 Ib.

564; *Miller* v. *Houcke et al.*, 1 Scam. 501; *Russel & Trip* v. *Martin*, 2 Scam. 492; *Hays* v. *Smith*, 3 Ib. 427; *Swarde* v. *Warden*, 3 Rawle, 101; *King* v. *Mims*, 7 Dana, 268; *Ferridge* v. *Selser*, 4 How. (Miss.) 566. In 9 Miss. 166, it is held, that even if an incompetent witness is admitted, it must appear that the witness gave evidence material to the case, or the judgment will not be reversed. In 1 Scammon, 501, it is ruled, that where an exception is taken to a question asked a witness on the trial of a cause, if the answer of the witness is not given in the bill of exceptions, the Supreme Court cannot know that the court below received improper testimony. In 2 Scam. 492, which was an action for slanderous words spoken, the counsel for the plaintiff read the declaration to a witness, and asked him if he had heard defendant speak the slanderous words therein charged. This question was objected to, the objection was overruled, and the witness permitted to answer. What the answer was is not shown. The Supreme Court held, that inasmuch as the answer of the witness did not appear, such ruling of the court could not be assigned for error. In the case in 7 Dana, 268, where a witness was asked an improper question, and the objection to it being overruled, it was answered, but the record did not show what the answer was, or that it was prejudicial to the objector, it was held that the judgment should not be reversed. The case in 1 Ohio, 141, referred to by the appellant, does not touch this question. The court there hold, only, that where the bill of exceptions does not profess to contain all the evidence, yet if the court below erred in ruling to a material fact in the defence, the Supreme Court would not undertake to say that defendant was not prejudiced by such erroneous ruling. In that case, it is established, that there was error in the ruling of the court in a material fact in the defence of the case. In this case, the very thing to be established—claimed on one side and denied on the other—is, whether there was error. If that error must appear affirmatively, not be presumed, how can it appear under the authorities above cited, unless we know what the testimony was, or answer to the question asked?

Let us look at this case as to this point, in view of the principles above indicated. Mays claimed that Deaver, by false and fraudulent representations, had injured him in the sale of this land. Having proved the trade, he then proposes to prove his damages. His object was to prove that the land which he in fact obtained, was worth less than it would have been, if it was of the contract quality and description. To this he calls a witness, and asks him how much it would have been worth, if it had been of the kind and description represented by defendant. This question is objected to, but the witness is permitted to answer. That answer is not here. Suppose he had answered, that he could not say? Or suppose he had given no higher value to the land as described by the defendant, than the actual value of the land which the plaintiff obtained? Or suppose he had given it a less value, stating that the land which the plaintiff, in truth, had, was more valuable than if it had been of the kind and quality represented by defendant— would defendant have been injured by such answers? Certainly not. And how can we presume, in the absence of anything to show what the witness did state, that his answer was such as to prejudice the defendant. To establish such a rule, we think, would not be safe, especially when the matter could have been put beyond all controversy, by setting out what the testimony was, if indeed it did prejudice the defendant. We must, therefore, hold that this assignment of error is not well taken. In doing so, however, it is proper to say, that we do not wish to be understood as recognizing or denying the correctness of the rule or measure of damages, as claimed by plaintiff. It is not necessary to decide that question, and hence we intimate no opinion.

The only remaining question is, the overruling of the motion for a new trial. This point is not insisted upon with much apparent confidence; but as it is presented, we notice it. Two grounds are alleged: one, the admission of improper testimony; and the other, the discovery of new and material evidence. The first point is disposed of by the

rulings above made. As to the second, it is only necessary to say, that there is no showing of proper diligence to obtain such testimony, before or at the time of the trial of the cause. Neither is the testimony in the cause before us, and for aught we can see, this new evidence is but cumulative. The affidavit of the defendant merely says, that he did not know of this testimony at the time of the trial. He does not show or aver diligence to obtain it, or to ascertain its existence. The affidavits of part of the witnesses, upon whom he relies, do not accompany his application, to show what they would swear if a new trial was granted; nor is any reason shown why they do not. As to one, if not more, of the witnesses, he also shows that he was subpœnaed, but failed to attend. For going to trial, when such witness was absent, instead of continuing the cause, in order to procure his testimony, no reason is shown. Hence, we can see no reason for holding, that the court did not exercise a proper discretion in overruling this motion. On this point, see *Cummins and another, administrator* v. *Walden*, 4 Blackford, 108; *Reeves* v. *Royal et al.*, 2 G. Greene, 451; *Millard* v. *Singer*, Ib. 144; *Loyd* v. *McClure*, Ib. 139; *Bright* v. *Wilson*, 7 B. Mon. 122; *Bullock* v. *Beach*, 3 Vert. 72; *Lester* v. *State*, 11 Conn. 15; 1 Blackford, 367; *Richardson* v. *St. Joseph Iron Co.*, 5 Ib. 146; *Stickney* v. *Cassell*, 1 Gilm. 418.

Judgment affirmed.